IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON W. MANN, # B-89052, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-1358-MJR |
| | ) |
| ROBERT D. BURNS, | ) |
| UNKNOWN PARTY JOHN/JANE DOE | ) |
| JAIL EMPLOYEES, | ) |
| BLUDWORTH, | ) |
| and JEFF WHITBECK, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff is currently incarcerated at East Moline Correctional Center ("East Moline"), serving a seven-year sentence for arson. He has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose during his imprisonment in the Jackson County Jail ("the Jail") as a pretrial detainee, where he asserts he was subjected to unconstitutional conditions of confinement, including vermin infestation, inadequate bedding, overcrowding, insufficient food, and poor sanitation and ventilation. He also claims that his legal mail was improperly opened, his personal mail was delayed or stolen, and he was denied access to the law library.

Earlier in 2014, Plaintiff brought a lawsuit against several other Jail officials for failing to protect him from an attack by three other Jail inmates on January 23, 2013, and for deliberate indifference to his medical needs following the beating. *Mann v. Gibbs, et al.*, Case No. 14-cv-421-MJR-SCW. That case is still pending in this Court against five Defendants,

including Defendant Bloodworth (who is identified herein as Defendant Bludworth).

According to the complaint, Plaintiff's detention at the Jail began on December 13, 2012. He was placed in general population in "G-Block," which was filthy and where the ventilation ducts were clogged with dirt (Doc. 1, p. 5). Some detainees in that unit were affiliated with gangs, which led to violence and fights. In January 2013, Plaintiff requested placement in segregation for his own safety. He was housed in segregation until January 20, 2013, when he was moved to a low-security dormitory. In that location, he was forced to sleep on the floor with inadequate bedding and less than 10 square feet of personal space.

On January 23, 2013, Plaintiff was attacked and beaten by three other inmates. He asserts he was targeted because of his race, and that overcrowding was a contributing factor. That incident and the subsequent denial of medical attention are being addressed in Plaintiff's earlier civil action, Case No. 14-cv-421-MJR-SCW (Doc. 1, p. 5).

Plaintiff does not say whether he remained in the same housing area immediately following the attack. However, he states that on February 3, 2013, he was moved back to G-block, where there was inadequate ventilation and an infestation of leeches and gnats. He remained there until the second week of April 2013, when he was moved to the new wing of the Jail (Doc. 1, pp. 3, 5). He states that this move "corrected" the problems in "count I and IV" – however, the complaint does not identify which claims are associated with count I or count IV, nor does he use these designations anywhere in his statement of claim.[1] In addition to the ventilation and vermin problems, Plaintiff complains that the housing area was rancid and filthy, and that he was served inadequate portions of food that did not meet his nutritional needs or provide the minimum amount of calories required to maintain health. Because of these

---

[1] The statement of claim consists of numbered paragraphs (1 through 10) followed by one more paragraph containing a chronological narrative of events.

conditions, Plaintiff continues to suffer from chronic and debilitating pain and respiratory problems. He is receiving treatment for these symptoms at East Moline (Doc. 1, p. 5).

In addition, Plaintiff complains that unidentified Jail officers opened his legal mail, delayed delivery of his mail, and stole some of his mail (Doc. 1, p. 4). He claims both that the Jail did not operate a law library, and that he was denied access to the law library between January 24 and August 14, 2013 (Doc. 1, p. 5). He asserts that his First Amendment rights were violated by the Jail's inadequate grievance procedures, which inhibited him from filing and exhausting grievances.[2] Finally, he charges that Defendants were negligent in hiring, training and supervising Jail personnel, and were deliberately indifferent to detainees' safety by failing to control violent inmates and allowing the facility to become overcrowded.

Plaintiff brings all of the above claims against Defendant Burns, whom he describes as the sheriff/warden of the Jail. As to the other named Defendants, Plaintiff states that Defendants Bludworth and Whitbeck are "administrative correctional officer[s]" who are responsible for supervision of other officers, and are responsible for detainees' health and safety (Doc. 1, p. 2). As relief, he seeks compensatory and punitive damages, as well as an order compelling Defendants to give him proper medical care (Doc. 1, p. 6).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that

---

[2] Plaintiff states he attached a copy of one of his grievances, but he failed to include the document with his complaint (Doc. 1, p. 4).

refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

At the outset, to the extent that Plaintiff seeks to pursue any claims in this action relating to the January 23, 2013, assault on him, those claims are dismissed from this case as duplicative of the pending claims in his previous lawsuit, *Mann v. Gibbs, et al.*, Case No. 14-cv-421-MJR-SCW. This dismissal includes claims that any Defendant was deliberately indifferent to the risk of violence posed by overcrowded conditions, and that any Defendant failed to control violence-prone inmates.

For the convenience of the Court, Plaintiff's remaining claims shall be designated as follows. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these

counts does not constitute an opinion as to their merit.

**Count 1:** Unidentified Jail employees housed Plaintiff under conditions which posed an unconstitutional risk to his health, including filthy, vermin-infested, and inadequately ventilated living areas; inadequate bedding; cramped sleeping quarters of less than ten square feet per person; and insufficient food to maintain normal health;

**Count 2:** Unidentified jail employees interfered with Plaintiff's legal and personal mail;

**Count 3:** Unidentified jail employees denied Plaintiff access to the Jail's law library;

**Count 4:** Plaintiff's grievances were mishandled;

**Count 5:** Defendants Burns, Bludworth, and Whitbeck failed to properly hire, train, or supervise their subordinate employees in order to protect detainees from other violent inmates.

After fully considering Plaintiff's allegations, the Court concludes that as pled, the complaint fails to state a claim upon which relief may be granted. Accordingly, the complaint shall be dismissed without prejudice. However, Plaintiff shall be allowed an opportunity to submit an amended complaint, to correct the deficiencies in his pleading as to some of the counts listed above. If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g). The amended complaint shall be subject to review pursuant to § 1915A.

**Count 1 – Unconstitutional Conditions of Confinement**

The combination of living conditions described by Plaintiff is of concern to the Court, and this claim may be viable if Plaintiff provides further information as to which jail employees were directly responsible for failing to correct those conditions.

Claims brought by pretrial detainees pursuant to § 1983 arise under the Fourteenth

Amendment and not the Eighth Amendment.  *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000).  However, the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'"  *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)).  Thus, for "cruel and unusual punishment" claims brought by a detainee, the plaintiff must show that the jail officials knew that the plaintiff was at risk of serious harm, and that they disregarded that risk by failing to reasonably discharge the risk.  *Grieveson v. Anderson*, 538 F.3d 763, 771-72, 777-79 (7th Cir. 2008).

Conditions of confinement that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).  Jail officials violate the Eighth Amendment when they show deliberate indifference to adverse conditions that deny "the minimal civilized measure of life's necessities," including "adequate sanitation."  *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012); *Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007)).  "[C]onditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'"  *Budd*, 711 F.3d at 842 (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *Gillis*, 468 F.3d at 493; *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995)).

The combination of the unsanitary and crowded conditions, and the lack of

adequate nutrition, indicates that Plaintiff may have faced an objective risk to his health. However, the complaint does not clearly state which jail officials were directly responsible for placing Plaintiff in the unsanitary housing areas, nor does he identify any guards or other staff who failed to respond to his requests for help to correct the conditions. Likewise, he does not say who was responsible for the inadequate meals. The only Defendant mentioned by Plaintiff in his statement of claim is Defendant Burns, whom he seeks to hold responsible for the actions of other jail officers under his command.

In order to maintain a deliberate indifference claim against any jail official, a plaintiff must show that the individual defendant had actual knowledge of the unconstitutional conditions of confinement, yet failed to take any measures to mitigate the risk of harm to the prisoner's health or safety. *See Farmer*, 511 U.S. at 837. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). Further, § 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (internal quotations and citations omitted). A supervisor such as a warden or sheriff cannot be held liable for the misconduct of other employees merely because s/he holds a position of authority. The doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). This is the problem with Plaintiff's attempt to bring his claims against Defendants Burns, Bludworth, and Whitbeck, based solely on their role as supervisors over other officers. The complaint contains no facts to suggest that any of them had direct knowledge of the conditions he faced, let alone personal involvement in failing to correct the problems. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to state a claim against a defendant, a plaintiff must describe what each named defendant did (or failed to do), that violated the plaintiff's constitutional rights. For a deliberate indifference claim, the plaintiff must allege facts that demonstrate the defendant's knowledge of the circumstances that placed his health or safety at risk, such as a description of what steps the plaintiff took to bring the problem to the attention of that defendant. Plaintiff's complaint herein is entirely devoid of such allegations, other than his claim that he wrote grievances to some person(s) at the Jail.

In order to proceed with Count 1, Plaintiff must submit an amended complaint that includes factual allegations regarding which Jail officials were personally involved in the alleged violations, in accordance with the instructions below.

**Count 2 – Mail Interference**

As with Count 1, Plaintiff never identifies which jail official(s) may have been responsible for opening his legal mail, or delaying/stealing his personal mail. But this claim suffers from more serious deficiencies. Plaintiff does not say whether mail to or from his attorney was opened just once, or more frequently. An occasional or inadvertent opening of legal correspondence does not violate the Constitution. *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Bryant v. Winston*, 750 F. Supp. 733 (E.D. Va. 1990). Likewise, a sporadic disruption of mail service is not a constitutional violation. Although the First Amendment "applies to communications between an inmate and an outsider," a valid claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000); *see also Rowe*, 196 F.3d at 782.

Based on Plaintiff's brief and conclusive allegations regarding his mail, the Court

is unable to discern what occurred or whether Plaintiff's constitutional rights were implicated. If he believes that he has a sustainable constitutional claim, Plaintiff may include Count 2 in an amended complaint.

**Count 3 – Denial of Access to Law Libraray**

Again, no jail official who prevented Plaintiff from using the law library is identified in the complaint. Equally important is the fact that, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). A prisoner's complaint must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Id.*

The complaint herein fails to suggest that Plaintiff's lack of library access hindered his ability to prosecute any legal claim. Count 3 thus fails to state a claim upon which relief may be granted. If facts exist to support a constitutional claim, Plaintiff may include this count in his amended complaint as well.

**Count 4 – Failure to Process Grievances**

Detainees have the right to present their complaints and grievances to jail officials in order to resolve problems related to their imprisonment. *See Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005). Furthermore, exhaustion of administrative remedies is a prerequisite to filing a § 1983 action in federal court, as Plaintiff points out. 42 U.S.C. § 1997e(a). However, if administrative remedies become "unavailable" due to jail officials' failure to respond to inmate

grievances, the exhaustion requirement may be satisfied. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

Regardless of whether jail officials comply with their own grievance procedures, alleged flaws in the grievance system or mishandling of grievances will not support an independent constitutional cause of action. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of jail or prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). For this reason, Count 4 shall be dismissed with prejudice. Plaintiff must omit this claim from his amended complaint.

### Count 5 – Negligent Hiring, Training, and Supervision

As noted above in the discussion of Count 1, negligence in any form does not amount to a constitutional violation. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). Plaintiff's brief statement regarding this claim implies that he wishes to hold the supervisory Defendants (Burns, Bludworth, and Whitbeck) liable for the constitutional violations allegedly caused by their employees' lack of proper training as well as their own insufficient administrative control (Doc. 1, p. 5). This claim is thus based on a theory of supervisory liability, which will not support a § 1983 action. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Furthermore, this claim appears to again relate back to the physical attack on Plaintiff of January 23, 2013, which he attributes to these Defendants' failure to protect him and others from inmate-on-inmate violence. As such, it is duplicative of the claims brought in Case No. 14-cv-421-MJR-SCW.

For these reasons, Count 5 shall also be dismissed with prejudice, and must be omitted from any amended complaint Plaintiff may submit.

**Injunctive Relief**

As Plaintiff was advised in reference to Case No. 14-cv-421-MJR-SCW, his request for an injunction requiring the Jackson County Jail Defendants to provide him with medical care, by all indications, is moot. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at the Jackson County Jail under the conditions described in the complaint, would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

Plaintiff has not been incarcerated at the Jail since he was transferred to the custody of the Illinois Department of Corrections in August 2013. Furthermore, he states that he is now receiving medical care at East Moline for the pain and respiratory problems he claims resulted from the Jail conditions. For these reasons, Plaintiff's request for injunctive relief is **DENIED AS MOOT** at this time. Such a request for relief should not be included in the amended complaint, unless Plaintiff can demonstrate that he is likely to again be incarcerated at the Jail under the conditions described in Count 1.

**Pending Motions**

Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2) shall be addressed in a separate order.

The motion for recruitment of counsel (Doc. 3) and motion for service of process at government expense (Doc. 4) shall be held in abeyance pending the receipt and review of an amended complaint.

**Disposition**

The Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. All claims relating to the January 23, 2013, attack on Plaintiff at the Jail are **DISMISSED** from this action as duplicative of the claims in *Mann v. Gibbs, et al.*, Case No. 14-cv-421-MJR-SCW. **COUNTS 4 and 5** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint within 35 days of the entry of this order (**on or before February 13, 2015**). It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions. He should label the pleading "First Amended Complaint" and include Case Number 14-cv-1358-MJR. The amended complaint shall present each claim in a separate count as designated by the Court above. In each count, Plaintiff shall specify, *by name*,[3] each Defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant. New individual Defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638

---

[3] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 9, 2015**

s/ MICHAEL J. REAGAN  
Chief Judge  
United States District Court