## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JASON W. MANN, # B-89052,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-1358-MJR** |
| | ) | |
| **ROBERT D. BURNS,** | ) | |
| **ROBERT TELLOR,** | ) | |
| **THOMAS KUPFERER,** | ) | |
| **ANTHONY ROBERTSON,** | ) | |
| **LINDSAY LEGERE,[1] GALE GLADSON,** | ) | |
| **CRAIG HARJU, CHRIS MORBER,** | ) | |
| **MATTHEW HINES,** | ) | |
| **CHARLIE GLIDEWELL,** | ) | |
| **JUSTIN GIBBS, MARK FRENCH,** | ) | |
| **TRAVIS FRED, JESSICA BEIN,** | ) | |
| **HEATH BARONE, JUSTIN BANDY,** | ) | |
| **RHONDA WALKER,** | ) | |
| **MICHAEL STRATTON,** | ) | |
| **JOHN HUFFMAN, LEE KERSTEN,** | ) | |
| **DARLENE BLUDWORTH,** | ) | |
| **and JEFF WHITBECK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

This matter is before the Court for a preliminary review of the First Amended

Complaint (Doc. 15), pursuant to 28 U.S.C. § 1915A.  Plaintiff filed the amended pleading at the

direction of the Court, after his original complaint was dismissed without prejudice for failure to

state a claim (Doc. 9).  Under § 1915A, the Court is required to review the complaint, and to

dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be

---

[1] This Defendant is erroneously identified on the Court's docket sheet as "Karen" Legere, although she is listed in the caption and throughout the amended complaint as Lindsay Legere.  The Clerk shall be directed to correct the mistake.

granted, or seek monetary relief from an immune defendant.

Plaintiff filed this action while confined at the East Moline Correctional Center. However, his claims arose during his incarceration as a pretrial detainee at the St. Clair County Jail ("the Jail"). Plaintiff asserts that he was subjected to unconstitutional conditions of confinement, including vermin infestation, inadequate bedding, overcrowding, insufficient food, and poor sanitation and ventilation. He also claims that his legal mail was improperly opened, his personal mail was delayed, and he was denied access to the law library.

**The First Amended Complaint (Doc. 15).**

In addition to the three Defendants named in the original complaint (Sheriff Burns, Officer Bludworth, and Officer Whitbeck), the amended complaint includes 19 new Defendants. Bludworth and Whitbeck are erroneously listed twice on the Court's electronic docket; the Clerk shall be directed to terminate the duplicate entries.

Plaintiff's detention at the Jail began on December 13, 2012. He was in general population in "G-Block." This living area was filthy, vermin-infested, and had clogged ventilation ducts (Doc. 15, p. 5). The food portions were insufficient to maintain normal health. Plaintiff began to write grievances over the conditions, but never got any response.

On January 5, 2013, Plaintiff was placed in protective custody.

On January 19, 2013, Defendants Legere and Bludworth moved Plaintiff to the C-Block dormitory, knowing that the unit lacked space and adequate bedding. He asked where he was supposed to sleep, to which Defendant Legere replied, "good luck finding a spot" (Doc. 15, p. 6). Plaintiff was forced to sleep on the floor in a cramped space. The conditions in C-Block were also "nasty" and "created serious health risks" (Doc. 15, p. 5). Plaintiff filed grievances with Defendant Glidewell, who mishandled them.

On January 23, 2013, Defendants Gibbs and Fred moved Plaintiff to B-dormitory. This area was also overcrowded and lacked sufficient bedding or space to sleep. Plaintiff began writing daily grievances over the conditions, as well as daily requests for health care due to the filthy conditions. Defendants Kupferer (medical director) and Gladson (nurse) refused to respond to Plaintiff's medical requests.

On February 3, 2013, Defendant Stratton came to investigate the grievances that Plaintiff had written about the conditions in B-dormitory. That evening, he moved Plaintiff back to G-Block. Plaintiff complained to Defendant Harju about moving back to G-Block, but he told Plaintiff to "deal with it" (Doc. 15, p. 7). G-Block was infested with leeches and gnats in the bathrooms. The air vents were filthy and clogged. Plaintiff and other inmates were forced to stay outside their cells for 12 hours each day with only concrete or steel to sit or lie on. He was still not given sufficient food to maintain normal health. Plaintiff remained in these conditions through the second week of April 2013. He continued to write daily grievances and medical requests, none of which were answered. He spoke to Defendants Tellor, Robertson, Legere, Morber, Hines, Glidewell, Gibbs, French, Fred, Bein, Barone, Bandy, Walker, Stratton, Huffman, Kersten, and Bludworth about the bad conditions. He also wrote letters to Defendants Whitbeck and Burns. However, none of these individuals took any action to correct the problems Plaintiff describes.

Plaintiff claims that Defendants Kupferer and Gladson, as well as the Defendants listed in the preceding paragraph, were all made aware of the health risks, "numerous injuries" caused by long hours resting on concrete and/or steel, and insufficient food, yet were deliberately indifferent to these conditions (Doc. 15, p. 8).

Plaintiff complains that in early February 2013, Defendants Gibbs, Huffman, and

Barone purposely delayed the distribution of Plaintiff's mail to him, when they saw Plaintiff and another inmate watching them examine the incoming mail (Doc. 15, p. 8). Plaintiff's anticipated mail was delayed for almost a week.

Plaintiff's legal mail was opened outside his presence on at least one occasion. He describes an instance when documents had been removed from the discovery materials mailed to Plaintiff by his attorney. He claims that Defendants Gibbs, Huffman, and Barone were responsible for this action.

In late February 2013, Plaintiff started requesting to use the law library (Doc. 15, p. 9). He wanted both to find material needed to prepare for his criminal case, and to bring a claim over his beating in January 2013 (this claim is pending in this Court as *Mann v. Gibbs, et al.*, 14-cv-421-MJR-SCW).[2] Plaintiff spoke to the following Defendants regarding access to the law library and legal materials: Tellor, Robertson, Legere, Morber, Hines, Glidewell, Gibbs, French, Fred, Bein, Barone, Bandy, Walker, Stratton, Huffman, Kersten, and Bludworth. He also wrote numerous letters on this issue to Defendants Whitbeck and Burns. Defendant Robertson allowed Plaintiff to use a 2012 book of Illinois Compiled Statutes, but nothing else. He was given paper and a pencil to prepare his documents, but no pen. Defendant Stratton told Plaintiff he would have to "make do" with these materials.

Based on the facts pled in the amended complaint, Plaintiff asserts the following claims for relief under the Eighth Amendment: against Defendants Legere and Bludworth for failing to prevent violence against Plaintiff; against Defendant Glidewell for refusing to respond to his grievances; against Defendants Gibbs, Fred, Tellor, Robertson, Legere, Morber, Hines,

---

[2] Plaintiff also notes that he currently has a post-conviction challenge pending, in which he is represented by counsel. However, it is apparent that this legal action could not have been pending at the time Plaintiff was still incarcerated at the Jail and seeking law library access, because at that time he had not yet been convicted.

Glidewell, French, Bein, Barone, Bandy, Walker, Stratton, Huffman, Kersten, Whitbeck, and Burns, for housing him in unsanitary and crowded conditions; against Defendants Kupferer and Gladson for failing to prevent the health risks posed by the filthy, vermin-infested living areas and the insufficient food rations, and for failing to provide medical care; against Defendants Stratton and Harju for failing to "curb the known pattern of inmate-on-inmate violence" in G-Block; and against Defendants Gibbs, Huffman, and Barone for delaying his legal correspondence and personal mail (here, Plaintiff also asserts a Fourteenth Amendment due process violation) (Doc. 15, pp. 10-13). He also claims that Defendants Tellor, Robertson, Legere, Morber, Hines, Glidewell, Gibbs, French, Fred, Bein, Barone, Bandy, Walker, Stratton, Huffman, Kersten, Bludworth, Whitbeck, and Burns violated his due process rights under the Fourteenth Amendment by failing to provide him access to a law library and legal materials. *Id.* Plaintiff seeks monetary damages (Doc. 15, pp. 14-16).

**Plaintiff's "Declaration in Support of Amended Complaint" (Doc. 19)**

Plaintiff submitted this document to the Court on approximately May 6, 2015, more than three months after he filed the First Amended Complaint (Doc. 19, pp. 4-6). It contains new allegations that were not included in the amended complaint, such as Plaintiff's claim that the named Defendants interfered with his communication with his criminal defense lawyer, and thus caused his lawyer's performance to be inadequate. This in turn rendered his trial unfair and deprived him of his right to counsel. He is now pursuing that claim in his post-conviction action.

Additionally, he states that while he was housed in the "new portion" of the Jail, raw sewage would back up in the toilets, and officers harassed him with "excessive lighting" and lack of toilet paper, as well as the other conditions raised in Counts 1-3 herein.

As Plaintiff was warned in the order dismissing his original complaint (Doc. 9), the Court does not accept piecemeal amendments to pleadings. The "Declaration in Support" (Doc. 19) appears to be an improper attempt to add new facts to the operative complaint (Doc. 15) in just such a piecemeal fashion. As such, the new facts presented in the "Declaration in Support" shall not be considered at this juncture. If Plaintiff finds it necessary to include facts that are not contained in the First Amended Complaint, he must submit a new amended complaint in accordance with Federal Rule of Civil Procedure 15 and SDIL Local Rule 15.1.[3]

## Merits Review Pursuant to 28 U.S.C. § 1915A

Upon assessing Plaintiff's original complaint, the Court divided his claims into five counts (Doc. 9). **Count 1** addressed the unsanitary housing conditions; **Count 2** included the claims for interference with legal and personal mail; and **Count 3** was for denial of access to the law library. These three claims were dismissed without prejudice along with the original complaint. The next two claims were dismissed with prejudice: **Count 4** for mishandling of grievances, and **Count 5** against Defendants Burns, Bludworth, and Whitbeck for failure to properly hire, train, or supervise other staff to protect inmates from violence.

The First Amended Complaint includes a claim against Defendant Glidewell that falls within the scope of the dismissed **Count 4** (Doc. 15, p. 10). This claim shall remain dismissed with prejudice and shall not be considered further.

Also dismissed on initial review were duplicative claims relating to a January 23, 2013, inmate assault on Plaintiff, which were already pending in *Mann v. Gibbs, et al.*, Case No. 14-cv-421-MJR-SCW. That dismissal also included claims against any Defendant for deliberate

---

[3] Federal Rule of Civil Procedure 15(a)(1) states that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading[.]" Further, in this District, the proposed amended pleading "must be submitted at the time the motion to amend is filed," and all new material in the amended pleading must be underlined. SDIL Local Rule 15.1.

indifference to the risk of violence posed by overcrowded conditions, and against any Defendant for failing to control violence-prone inmates.  In the First Amended Complaint, Plaintiff has attempted to include these dismissed claims against Defendants Legere, Bludworth, Stratton, and Harju.  In accordance with the Court's earlier dismissal of these inmate-violence-related claims, this matter shall not be considered further in this action.  The dismissal of these claims is without prejudice.  Defendant Harju shall be dismissed from the action without prejudice, as Plaintiff does not articulate any other claims against him.

Based on the factual allegations in the First Amended Complaint, Counts 1, 2, and 3 are recast as follows:

**Count 1:**  Defendants Gibbs, Fred, Tellor, Robertson, Legere, Morber, Hines, Glidewell, French, Bein, Barone, Bandy, Walker, Stratton, Huffman, Kersten, Whitbeck, Bludworth, and Burns  housed Plaintiff under conditions which posed an unconstitutional risk to his health, including filthy, vermin-infested, and inadequately ventilated living areas; inadequate bedding; cramped sleeping quarters; and insufficient food to maintain normal health;

**Count 2:**  Defendants Gibbs, Huffman, and Barone delayed or failed to deliver Plaintiff's legal mail, and delayed delivery of his personal mail;

**Count 3:**  Defendants Tellor, Robertson, Legere, Morber, Hines, Glidewell, Gibbs, French, Fred, Bein, Barone, Bandy, Walker, Stratton, Huffman, Kersten, Bludworth, Whitbeck, and Burns denied Plaintiff access to the Jail's law library and to legal materials.

In addition, the factual allegations suggest one more potential claim:

**Count 6:**  Defendants Kupferer and Gladson failed to provide medical care or prevent health risks to Plaintiff posed by the unsanitary conditions and inadequate food.

## Count 1 – Unconstitutional Conditions of Confinement

This claim was dismissed originally because Plaintiff failed to identify the individuals who were responsible for the bad conditions, or from whom he sought help to mitigate the conditions.  He now has identified a number of these individuals.  As well, he has

alleged that he made these officers aware, either in personal conversations or through letters, of the unsanitary and crowded conditions in his housing areas.

As noted in the order (Doc. 9) assessing the original complaint, claims for unconstitutional conditions of confinement brought by pretrial detainees fall under the Due Process Clause of the Fourteenth Amendment, not under the Eighth Amendment. *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). The same is true for claims over the denial of medical care. Counts 1 and 6 in this action fall into these categories. *See Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012); *Forest v. Prine*, 620 F.3d 739, 744-45 (7th Cir. 2010); *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). The Eighth Amendment governs claims for convicted prisoners. *Id*.

Pretrial detainees are afforded "*at least* as much protection as the constitution provides convicted prisoners," *Board v. Farnham*, 394 F.3d 469, 477-78 (7th Cir. 2005) (emphasis in original) (internal quotations and citations omitted). The Seventh Circuit has generally applied the same standards to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners). *Id*. Thus, for "cruel and unusual punishment" claims brought by a detainee, the plaintiff must show that the jail officials knew that the plaintiff was at risk of serious harm, and that they disregarded that risk by failing to take reasonable measures to abate it. *Grieveson v. Anderson*, 538 F.3d 763, 771-72, 777-79 (7th Cir. 2008); *see also Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

In *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (June 22, 2015), the Supreme Court recently ruled that a pretrial detainee's Fourteenth Amendment due process claim regarding the use of excessive force turned on the objective reasonableness of the use of force, and proof as to the defendants' mental state was not required. *Id*. at 2472-73. However, the high court

specifically declined to decide whether such an objective standard might suffice in a case involving mistreatment of a detainee, as the defendants in that case did not dispute that they had acted purposefully or knowingly.  Nevertheless, the *Kingsley* Court noted that an objective standard had been applied in *Bell v. Wolfish*, 441 U.S. 520, 541-43 (1979), relative to a variety of prison conditions, including double-bunking.  *Kingsley*, 135 S. Ct. at 2472-74.  *Bell* did not specifically state that an objective standard applied; rather, the *Kingsley* Court characterized the "rationally related" and "appears excessive in relation to a legitimate nonpunitive governmental purpose" standards as being objective.

As to **Count 1**, Plaintiff has alleged both the objective and subjective factors.  At this stage, he may proceed on his claims for unconstitutional conditions of confinement against Defendants Gibbs, Fred, Tellor, Robertson, Legere, Morber, Hines, Glidewell, French, Bein, Barone, Bandy, Walker, Stratton, Huffman, Kersten, Whitbeck, Bludworth, and Burns.

## Count 2 – Mail Interference

Plaintiff has now identified the officers (Gibbs, Huffman, and Barone) who delayed the delivery of his personal mail.  These same Defendants opened Plaintiff's legal mail and removed discovery documents that Plaintiff's attorney sent to him.

As noted in the original threshold order, in order to state a claim for interference with personal mail that rises to the level of a First Amendment violation, there must have been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery.  *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000); *see also Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999).  A single or sporadic disruption of mail service does not violate the Constitution. Plaintiff alleges that his mail was delayed for one week, on one occasion after Defendants Gibbs,

Huffman, and Barone observed Plaintiff watching them sort the mail.[4]  While the Court cannot condone the unprofessional remarks and behavior Plaintiff describes, this incident is not of constitutional magnitude.

Likewise, Plaintiff describes only one instance where his legal mail was opened and some of the documents, relating to discovery in his criminal case, were not given to him.  An occasional or inadvertent opening of legal correspondence does not violate the Constitution.  *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Bryant v. Winston*, 750 F. Supp. 733 (E.D. Va. 1990).  The Supreme Court has noted that the interception of a criminal defendant's confidential communications with his lawyer is subject to harmless-error analysis.  *Weatherford v. Bursey*, 429 U.S. 545, 554-59 (1977).  The Seventh Circuit has observed that the same is true in prisoners' civil litigation.  *Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010) (it is "unlikely that isolated interferences with attorney-client communications in prisoner cases will block the prisoner's access to meaningful justice").  Plaintiff has not articulated any harm that he suffered, or any prejudice that ensued as a result of his legal mail being opened outside his presence on this one occasion, or from the failure to deliver the documents to him.

The First Amended Complaint does not state a claim upon which relief may be granted, for either the interference with personal mail, or the opening and failure to deliver all the contents of his legal mail.  Accordingly, **Count 2** against Defendants Gibbs, Huffman, and Barone shall be dismissed without prejudice.

## Count 3 – Denial of Access to Law Library

In the amended complaint, Plaintiff now names a number of officials to whom he

---

[4] The complaint does not suggest a retaliation claim, as Plaintiff does not describe having engaged in any constitutionally protected activity (such as bringing a grievance or complaint) that triggered the officers' actions.  *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

directed his requests to use the law library and obtain legal materials.  He identifies two legal matters that he was attempting to pursue at the time he was housed in the Jail:  First, he wanted to "prepare for [his] criminal case," and second, he wanted to bring a civil claim over the beating he suffered at the Jail in January 2013.

As the Court previously discussed, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*."  *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).  To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009).

The First Amended Complaint does not articulate any prejudice to Plaintiff's ability to prepare himself to contest his criminal charges, as a result of his very limited access to law books or the library.  Likewise, he does not demonstrate any hindrance to his ability to pursue his civil claim over the January 2013 beating.  Plaintiff filed his complaint in this Court in April 2014, as *Mann v. Gibbs, et al*., Case No. 14-cv-421-MJR-SCW.  He has filed numerous motions as the case has progressed, and that matter is still pending.  The Court cannot detect any detriment that Plaintiff has suffered in either of these matters due to the lack of access to a law library.  Likewise, even though Plaintiff was not given a pen to write with, he had pencil and paper and was able to prepare legible pleadings and motions.

For these reasons, Plaintiff fails to state a claim upon which relief may be granted for denial of access to a law library, legal materials, or supplies.  **Count 3** shall therefore be dismissed without prejudice, against Defendants Tellor, Robertson, Legere, Morber, Hines, Glidewell, Gibbs, French, Fred, Bein, Barone, Bandy, Walker, Stratton, Huffman, Kersten,

Bludworth, Whitbeck, and Burns.

## Count 6 – Medical Care and Mitigation of Health Risks

Plaintiff claims that he made numerous requests for medical care, directed toward Jail Medical Director Defendant Kupferer and Defendant Nurse Gladson.  While he notes that his requests were prompted by the unsanitary, unhealthy, and crowded conditions under which he was housed, Plaintiff never describes any illnesses or symptoms he developed that required medical care.  Nor does he indicate what sort of medical treatment he should have received in response to his requests.  He does not mention that he suffered any ill effects or weight loss from the allegedly meager food portions.

The Jail conditions, as described by Plaintiff, clearly presented some risks to his health.  He complained to the officials who were responsible for housing him in those conditions, and that claim shall go forward in Count 1.  However, nothing in the complaint indicates that Defendants Kupferer or Gladson had any obligations beyond providing medical treatment to Plaintiff for any diseases, symptoms, or other health conditions he might develop.   The complaint does not identify any such medical problems, thus the Court cannot discern whether Plaintiff suffered from any objectively serious medical condition that should have prompted the medical-provider Defendants to respond.  The conclusory nature of his allegations, for example, that he was not given sufficient food to maintain normal health, and had "numerous injuries" which he does not further explain, do not suffice to demonstrate that Plaintiff was in need of medical care.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  There is no basis to conclude that Plaintiff suffered from an objectively serious medical problem that would implicate Defendant Kupferer or Gladson for an unconstitutional denial or deprivation of necessary health care.

The gist of Plaintiff's claim against Defendants Kupferer and Gladson seems to be that as medical providers, they had over-arching supervisory responsibility to make sure that prisoners did not face health risks in the Jail, and it appears that Plaintiff complained to them in an effort to get them to correct the unsanitary conditions that other officials had failed to address. However, the doctrine of *respondeat superior*, or supervisory liability, does not apply in a civil rights case.  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).  Plaintiff's allegations against Defendants Kupferer and Gladson do not suggest that either of them was personally responsible for maintaining, or failing to correct, the housing conditions at the Jail.  Therefore, he has not stated a cognizable claim against them based on the unsanitary conditions of confinement.

**Count 6** against Defendants Kupferer and Gladson shall be dismissed without prejudice.

## Pending Motions

Plaintiff filed two motions for recruitment of counsel (Docs. 3, 16).  These shall be referred to the United States Magistrate Judge for further consideration.

Likewise, there are two motions for service of process at government expense (Docs. 4, 20).  These motions are **GRANTED IN PART AND DENIED IN PART.**  Service shall be ordered below on those Defendants who remain in the action.  No service shall be made on the dismissed Defendants.

## Disposition

The Clerk is **DIRECTED** to correct Defendant Legere's first name to "Lindsay" (not Karen).  The Clerk is further **DIRECTED** to terminate the following duplicate parties: "Bludworth," which is the same individual as "Darlene Bludworth," and one of the two entries

for "Jeff Whitbeck," whose name appears twice on the docket sheet. To clarify, Darlene Bludworth and Jeff Whitbeck should remain on the electronic docket, but only once.

**COUNTS 2, 3, and 6** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants **HARJU, KUPFERER,** and **GLADSON** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **BURNS, TELLOR, ROBERTSON, LEGERE, MORBER, HINES, GLIDEWELL, GIBBS, FRENCH, FRED, BEIN, BARONE, BANDY, WALKER, STRATTON, HUFFMAN, KERSTEN, BLUDWORTH,** and **WHITBECK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an

appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motions for recruitment of counsel (Docs. 3, 16).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **REMINDED**  that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 5, 2015**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court